'CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

AUG 1 7 2012

JULIA C. DUDLEY/CLERK
BY: *[signature]*
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| MARY CHRISTINE LORENZ, | ) | Civil Action No. 7:10-cv-00487 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| FEDERAL EXPRESS CORP., | ) | |
| | ) | By: Hon. James C. Turk |
| Defendant. | ) | Senior United States District Judge |

This case is before the Court on Defendant's Motion for Summary Judgment. (Dkt. No. 40). Plaintiff, Mary Christine Lorenz ("Plaintiff" of "Lorenz"), filed a Response in Opposition, (Dkt. No. 46), and Defendant replied, (Dkt. No. 48). Oral argument was held on July 25, 2012, and the matter is now ripe for disposition. For the reasons set forth below, Defendant's Motion for Summary Judgment, (Dkt. No. 40), is **GRANTED**.

I.      **Factual and Procedural Background**

Plaintiff's complaint asserts four Title VII claims: (1) hostile work environment as a result of sex discrimination; (2) sex discrimination; (3) retaliation; and (4) wrongful termination. (Dkt. No. 26 at 12). Construed in the light most favorable to Lorenz the facts are as follows.

A.  **Plaintiff's Termination**

Plaintiff was employed by FedEx as a courier based out of FedEx's Roanoke, Virginia facility. She transferred to the Roanoke facility in April 2005. (Dkt. No. 46 at 1). Between July 2000 and April 2005 she was employed as a courier at FedEx's Watertown, Connecticut facility. (Dkt. No. 26 at ¶ 5). While there she worked without any significant discipline issues. (Dkt. No. 46 at 1). Plaintiff was terminated on August 2, 2010, after receiving three disciplinary letters in a

1

twelve month period.[1] (Dkt. No. 41-1 at 1). Plaintiff received a Performance Reminder in January 2010, (Dkt. No. 41-5), a Performance Reminder in July 2010, (Dkt. No. 41-6), and a Warning Letter in August 2010, (Dkt. No. 41-1). FedEx then terminated Lorenz in accordance with FedEx's Acceptable Conduct Policy 2-5 and Performance Improvement Policy 2-50, which each state that three such disciplinary letters will normally result in termination. (Dkt. Nos. 41-2, 41-3). Plaintiff was aware that receipt of three disciplinary letters normally resulted in termination. (Dkt. No. 41-7 at 66:8-12).[2] Since her termination, Lorenz's routes have been covered by another female courier, who is performing successfully. (Dkt. No. 41 at ¶ 95).

## B. FedEx's Policies

Employees at FedEx may appeal disciplinary actions they believe are unfair by utilizing a grievance procedure known as the "Guaranteed Fair Treatment" ("GFT") process. The GFT process consists of three steps. The first step is review of the disputed disciplinary action by the Managing Director in the employee's district. (Dkt. No. 41-10). Plaintiff notes that Operations Manager Owens and Human Resources Representative Wilson were also present at the review by the Managing Director. (Dkt. No. 46-2 at 115). The second step involves review by the Regional Vice President. (Dkt. No. 41-10). The third step involves review by an appeals board, comprised of FedEx executives, which is convened at FedEx Headquarters in Memphis, Tennessee. (Id.).

FedEx policies prohibit sexual harassment, retaliation, and sex discrimination. (Dkt. Nos. 41-13; 41-14; 41-15; 41-16). However, Plaintiff disputes that FedEx enforces these policies.

---

[1] Disciplinary letters include both Warning Letters and Performance Reminders.
[2] This conformed to FedEx's typical practice. The record reflects only one instance where an employee received three disciplinary letters and was not terminated. That employee's circumstances were factually distinct from those of Lorenz and the decision was made by a Managing Director not involved in the present case. (Dkt. No. 41 at ¶ 94).

(Dkt. No. 46 at ¶ 12). FedEx asserts that it provides employees training on these policies and that Operations Manager Owens, Operations Manager Thurston, and Senior Manager Kendrick had all received training on these policies. (Dkt. No. 41 at ¶ 13). Plaintiff, however, contests the adequacy of this training because "couriers in the Roanoke station received only one sexual harassment awareness class, which was conducted in 2005," and "management received only one sexual harassment awareness training class in January 2006." (Dkt. No. 46 at ¶ 13).

Additionally, FedEx employees are provided with an Internal EEO procedure that allows employees to report, and management to investigate, claims of unlawful treatment, including harassment, retaliation, and discrimination. (Id.). In the case of Title VII claims submitted through the Internal EEO procedure, the Legal Department directs the Managing Director's office, in conjunction with Human Resources, to conduct a formal investigation. The investigation results in the creation of an Investigative Report. The complaint forms and Investigative Report are confidential and only shared with the complaining employee's managers in the form of directives, if necessary. (Dkt. Nos. 41-4 at 115:21-116:13; 41-8 at 90:8-21, 108:5-16; 41-9 at 12:20-14:16, 20:18-21:18, 119:8-10). Plaintiff does not dispute that the Internal EEO procedure operates as described; she only disputes that it results in a full and adequate investigation of claims. (Dkt. No. 46 at ¶¶ 9, 10, 17). In particular, Plaintiff asserts that not all witnesses to incidents are interviewed by management; rather management only interviews those witnesses that will give answers favorable to management. (Dkt. No. 46 at ¶ 17).

Both the GFT and Internal EEO procedures are publicized to all employees in the Employee Handbook, Employee Policy Manual, and plaques hung in employee break areas at FedEx facilities, including the Roanoke, Virginia facility. (Dkt. No. 41 at ¶ 11).

3

### C. Plaintiff's Chain of Command

While employed by FedEx Lorenz reported to Operations Manager Owens. (Dkt. No. 41 at ¶ 4). Operations Manager Owen and Manager Thurston ran the day-to-day operations at the Roanoke facility. (Id.). Mangers Owens and Thurston reported to Senior Manager Kevin Kendrick. (Id.). Senior Manager Kendrick is responsible for operations at three stations in western Virginia and spreads his time between the facilities, visiting Roanoke between once a week and once a month. (Dkt. Nos. 41 at ¶ 4; 46 at ¶ 4). Senior Manager Kendrick reports to Managing Director Robert Center, who is based in Richmond and is responsible for the entire district. (Dkt. No. 41 at ¶ 4).

### D. Plaintiff's Performance Record

On January 28, 2010, Lorenz was issued a Performance Reminder and Decision Day by Manager Thurston stating that Lorenz had failed to use Courier Best Practices in two instances earlier that month. (Dkt. No. 26 at ¶ 42). Lorenz's failure to follow Courier Best Practices resulted in Lorenz failing to even attempt to deliver five packages. (Dkt. No. 41-5 at 1). The disciplinary letter also mentions several other instances where Lorenz failed to use Courier Best Practices in 2009. (Id.). Rather than following her Decision Day instructions and completing an action plan, Lorenz used the Decision Day to write a memorandum, which she copied to Wilson. The memorandum included the statement: "I feel that the almost daily unwanted sexual harassment, intimidation and vulgar language is [sic] inhibiting me from performing in the prescribed manner efficiently." (Dkt. No. 26-3). In response, Owens issued Lorenz an investigative suspension for her failure to turn in an action plan. (Dkt. No. 26 at ¶ 44).

On May 24, 2010, Manager Owens issued Lorenz an Investigative Suspension for allegedly leaving her truck running while she delivered a package. (Dkt. No. 26 at ¶ 42).

4

Lorenz disputes that she left the truck running. (Id.). On June 15, 2010, Lorenz received a Documented Counseling and Performance & Attendance letter from Manager Owens because she had allegedly filled out door tags incorrectly and had improperly timed her breaks. (Dkt. No. 26 at ¶ 50). Lorenz objected because she believed other male couriers had committed similar violations and had received no disciplinary action. (Dkt. Nos. 26 at ¶ 50 and 26-6).

On July 10, 2010, Owens gave Lorenz a Performance Reminder and Decision Day for a pattern of poor performance. (Dkt. No. 46 at ¶ 56). Specifically, on June 30, 2010, Lorenz had thirty late packages. (Id.). This problem was in addition to other performance problems noted above and a May 6, 2010 and June 25, 2010, failure to follow Courier Best Practices. (Dkt. No. 41-6 at 1). Lorenz again objected and in response sent Owens a letter describing other male couriers who had committed similar violations and yet had received no discipline. (Dkt. Nos. 26 at ¶ 51 and 26-6).

On August 2, 2010, Lorenz received a Warning Letter for allegedly falsifying company documents in violation of company policy. (Dkt. No. 26 at ¶ 53). On July 14, 2010, Lorenz recorded a delivery attempt at the G.E. location when she was not physically on G.E. property. (Dkt. No. 41-1 at 1). Later that same day, she recorded a delivery attempt at 2:59pm but did not sign in at the guard station, located outside the delivery area, until 3:05pm. (Id.). Lorenz explained in writing to FedEx why she did not believe she had falsified company documents. (Dkt. No. 26-7). On the same day, FedEx terminated Lorenz because she had received three disciplinary letters within twelve months. (Dkt. No. 26 at ¶ 53).

### E. Plaintiff's Allegations

#### 1. *Allegations of Sexual Harassment*

Lorenz alleges that Operations Manager Owens, Operations Manager Thurston, and Senior Manager Kendrick subjected her to disciplinary action and termination based on discriminatory and retaliatory animus. (Dkt. No. 46 at ¶ 5). Further, Lorenz claims that certain co-workers sexually harassed her. (Dkt. No. 46 at ¶ 7). However, Plaintiff admits that neither of her direct managers—Managers Owens and Thurston—nor Senior Manager Kendrick ever said anything to make her believe she was being treated differently because of her gender or because of her allegations of sexual harassment, (Dkt. No. 46 at ¶ 6), or that they ever personally subjected her to any sexual harassment, (Dkt. No. 46 at ¶ 7).

With regard to specific allegations against her co-workers, Lorenz alleges that on approximately July 21, 2009, during morning sort, co-worker Greg McClain "stood with his legs apart and stroked his genitals while Lorenz stood across from him." (Dkt. No. 26 at ¶ 30). Manager Thurston was allegedly present during this encounter. (Id.). Around July 31, 2009, Lorenz claims that McClain shoved her "against a counter, and grinded his front side into Lorenz's backside in the courier checkout room just before the stretch and flex meeting." (Dkt. No. 26 at ¶ 31). Lisa Cowling allegedly witnessed this incident. (Id.). In September 2009, Lorenz filed a complaint against FedEx in federal district court. (Dkt. No. 26 at ¶ 33). She alleges she informed her manager of the complaint and that within days the harassment by her co-workers escalated. (Id.). Specifically, she claims that Richard Ewers, a follow courier, made facial gestures mimicking oral sex at her while they were in the break room. (Id.). Lorenz further alleges that Jay Sheldon and Tim Ramsey were present. (Id.). A few days later, Lorenz overhead McClain and Ewers "loudly yelling" about a doctor performing a prostate exam with

6

his mouth. (Id.). On September 12, 2009, Lorenz wrote a letter to Manager Owens informing him of these incidents of harassment. (Dkt. No. 26 at ¶ 34). Subsequently, Lorenz was asked to submit an Internal EEO complaint, which she did. (Dkt. No. 26 at ¶ 35).

In January 2010, at a stretch and flex meeting, Lorenz overhead McClain complain that the job is not fun anymore. Further, when asked by Glen Wilson how the work environment was, McClain stated that it was hostile because "You have enemies and a bunch of snitches, snitches." (Dkt. No. 26 at ¶ 39). Tim Ramsey also commented that morale was low because of management's accommodation of the "whining crybabies that are upset about everything, including some joke or gesture." (Id.). On January 21, 2010, Lorenz informed Senior Manager Kendrick of these incidents. (Dkt. No. 26 at ¶ 40). She also noted that McClain had previously sandwiched her between himself and another male courier. (Id.). Lorenz alleges that in response to these concerns Kendrick stated "part of the reason it's [sexual harassment] running rampant, we have one manager running the sort .... I mean, Reed's running around like his hair's on fire. We've talked about this before .... Because he's not able to wander the belt up and down like we need him to, this other stuff seems to be getting out of hand ... way out of hand...." (Id.). On January 27, 2010, Lorenz wrote to Manager Owens informing him that she intended to continue to document her harassment and unequal treatment and discipline. (Dkt. No. 26 at ¶ 41).

On or about May 27, 2010, Lorenz alleges that a male courier made cat calls or wolf whistles directed at her as she walked past him. (Dkt. No. 26 at ¶ 49). Plaintiff was unable to specifically identify who made the cat calls. (Dkt. No. 46 at ¶ 54). This was the only new instance of harassment after her September 2009 letter and her October 2009 Internal EEO complaint. (Id.).

7

### 2. Internal EEO Complaints and EEOC Complaints

Around October 14, 2009, Lorenz submitted a second Internal EEO complaint. (Dkt. No. 26 at ¶ 35).[3] In the complaint Lorenz made allegations that she was being harassed by couriers McClain, Sheldon, Daponte, and Samuel. (Id.). Specifically, she complained of Daponte's misogynistic tirade against her, Samuel's comment that she had "purty legs," Samuel's repeated attempts to hug her, Samuel's horseplay with other male couriers while in dispatch, and the fact that Samuel's left his "void" cups in the truck. (Id.). After submitting this complaint, as Lorenz passed by some fellow couriers she heard courier Gary Rock yell to another courier, "We can't say 'suck' anymore." (Dkt. No. 26 at ¶ 36). Then, on October 29, 2009, Daponte used the FedEx intercom system to announce, during morning sort, "Greg McClain [sic], Tessa is on line 102 for you." (Dkt. No. 26 at ¶ 37).[4] Lorenz alleges that both Manager Thurston and Manager Owens were in close proximity to Daponte when he made the announcement. (Id.).

On November 24, 2009, Lorenz received a letter from Managing Director Center stating her Internal EEO complaint had "been thoroughly investigated." (Dkt. No. 26-2 at 2). The investigation concluded that FedEx "did identify some practices that may be inconsistent with our policies, culture and philosophy." (Id.). Specifically that Samuel likely hugged the male dispatcher and twisted his nipple. (Dkt. No. 41-21 at 7). The other allegations of harassment were not corroborated. (Dkt. No. 41-21).

---

[3] Plaintiff previously filed an Internal EEO complaint in March 2007. (Dkt. No. 26 at ¶ 15). Lorenz alleged that Manager Whitted placed Lorenz on a paid investigative suspension for exceeding twelve hours on shift and failing to take proper breaks. (Dkt. No. 26 at ¶ 15). On May 17, 2007, Lorenz received a letter from Managing Director Center stating her claim had "been thoroughly investigated." (Dkt. No. 26-1 at 2). The investigation concluded that FedEx "did identify some practices that may be inconsistent with our policies, culture and philosophy." (Id.). Subsequently, Lorenz filed a complaint with the EEOC alleging discrimination based on her sex and age and retaliation. (Dkt. No. 26 at ¶ 27). She was issued a Right to Sue letter on June 19, 2009. (Dkt. No. 26 at ¶ 29).
[4] Tessa had previously accused McClain of sexual harassment. (Id.).

Lorenz filed a second EEOC complaint on February 4, 2010. (Dkt. No. 26 at ¶ 44). The complaint alleged discrimination on the basis of sex, age, and also alleged retaliation. (Id.). Lorenz received a Right to Sue letter on July 29, 2010. (Id.).

Lorenz filed a third Internal EEO complaint on February 15, 2010. (Dkt. No. 26 at ¶ 44). In that complaint she alleged harassment and retaliation. (Id.). The complaint reiterated many of Lorenz's prior concerns. (Dkt. No. 41-29). On March 1, 2010, Lorenz received a letter from Managing Director Center stating her claim had "been thoroughly investigated." (Dkt. No. 26-5 at 2). The investigation did not corroborate any claims and found no violations of FedEx Policy violations. (Dkt. No. 41-30 at 8).

Lorenz alleges she filed a third EEOC complaint following her termination. (Dkt. No. 26 at ¶ 54). The complaint alleged sexual harassment, selective discipline, and wrongful termination. (Id.). However, the EEOC claims not to have received this complaint. (Dkt. No. 26 at ¶ 55). Consequently, Lorenz filed another complaint in February 2011, which made the same claims as the complaint that was never received. (Id.). On July 29, 2011, Lorenz received a Right to Sue Letter. (Dkt. No. 26-8).

## F. Fed Ex's Investigation

Following company policies, Managing Director Center, with assistance from the Human Resources Department, investigated each of Lorenz's claims. As part of the investigation, Center visited the Roanoke facility and interviewed Plaintiff's managers and co-workers. (Dkt. No. 41-9 at 23:9-27:3). The investigative reports details which individuals were interviewed and specifically notes that courier McClain was on medical leave for 72 days, during the investigative period, and thus unable to respond to Lorenz's allegations. (Dkt. No. 41-21 at 3). The investigation generated a detailed seven-page report, the conclusion of which was that the

9

majority of Lorenz's claims were unsubstantiated. (Dkt. No. 41-21). However, Center and Human Resources Representative Wilson did determine that courier Samuel had likely hugged a male dispatcher and twisted his nipples, as Lorenz had alleged. (Id. at 7). The report directed that Samuel and the dispatcher be counseled regarding their inappropriate work behavior. (Id. at 8). Additionally, Senior Manager Kendrick was directed to ensure Lorenz and McClain were not working in close proximity on a daily basis. (Id.).

## II.    Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, "the court is required to view the facts and draw reasonable inferences in a light most favorable to the nonmoving party." Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir.) (citations omitted), cert. denied, 513 U.S. 813 (1994). A genuine issue of material fact exists when a rational fact finder, considering the evidence in the summary judgment record, could find in favor of the non-moving party. Ricci v. DeStefano, 557 U.S. 557, 586 (2009). A motion for summary judgment should not be granted "unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances." Campbell v. Hewitt, Coleman, & Assocs., Inc., 21 F.3d 52, 55 (4th Cir. 1994). Summary judgment should be entered, however, if the court finds, after a scrupulous review of the record, that no reasonable jury could return a verdict for the non-moving party. See Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 958 (4th Cir. 1996).

10

However, "[g]enuine issues of material fact cannot be based on mere speculation or the building of one inference upon another." Barwick v. Celotex Corp., 736 F.2d 946, 963 (4th Cir. 1984). Indeed "the mere existence of a scintilla of evidence in support" for the nonmovant's position will not defeat a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). Thus, "conclusory statements of opinion are insufficient to defeat [a] motion for summary judgment." Monk v. Potter, 723 F. Supp. 2d 860, 873 (E.D. Va. 2010) (citing Erwin v. United States, 591 F.3d 313, 319 4th Cir. 2010)). In the context of Title VII claims, the Fourth Circuit has explained that because "unsupported speculation is insufficient … we generally consider self-serving opinions without objective corroboration not significantly probative." Evans, 80 F.3d at 962. Furthermore, the evidence presented must be admissible evidence and to the extent that it is not admissible, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2).

## III. Analysis

Plaintiff has conceded that there is no direct evidence of discriminatory conduct. (Dkt. No. 46 at ¶ 6). In the absence of such direct evidence, plaintiff's sex discrimination, retaliation, and wrongful termination claims are subject to the burden-shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

### A. Sex Discrimination

Under the McDonnell Douglas framework, the plaintiff must produce evidence sufficient to permit the fact finder to conclude (1) that plaintiff is a member of a protected class; (2) that she suffered an adverse employment action; (3) that at the time the employer took the adverse employment action plaintiff was performing at a level that met her employer's legitimate

11

expectations; and (4) that "she was treated differently than similarly situated employees outside the protected class." Brockman v. Snow, 217 F. App'x. 201, 206 (4th Cir. 2007) (applying Autry v. N.C. Dep't. of Human Res., 820 F.2d 1384, 1385 (4th Cir. 1987)). If the plaintiff demonstrates a prima facie case of discrimination, the burden shifts to the employer to present a legitimate, non-discriminatory reason for the adverse employment action. MacKey v. Shalala, 360 F.3d 463, 468 (4th Cir. 2004). Once the employer puts forth a legitimate, non-discriminatory reason, the burden shifts back to the plaintiff to show the proffered reason is a pretext for discrimination. Id. at 468-69.

In the present case, although Plaintiff is a member of a protected class and her termination is an adverse employment action, Plaintiff has failed to show the final two required elements. First, Plaintiff cannot show she was performing satisfactorily at the time of her termination. During the preceding twelve months Lorenz received three disciplinary letters. The first letter was for failing to attempt to deliver packages, specifically because Plaintiff had failed to follow Courier Best Practices on January 25 and January 28, resulting in five packages where Plaintiff did not even attempt delivery. (Dkt. No. 41-5 at 1). The second letter came after Plaintiff ignored the delivery times of packages, resulting in 30 late packages on one particular day. (Dkt. No. 41-6 at 1). The third letter was given after Plaintiff created false delivery records for a particular delivery to the G.E. facility. (Dkt. No. 41-1 at 1). Although Plaintiff generally disputes that there were valid performance reasons for her termination, she has not offered any evidence to show that FedEx believed she was performing at an acceptable level. Furthermore, Lorenz has admitted to committing the underlying acts that form the basis of her disciplinary letters. Plaintiff's assertion that she believed she was meeting expectations because male couriers who had similar performance issues were not disciplined does not create a material issue

12

of fact. A plaintiff's own testimony "cannot establish a genuine issue as to whether [the plaintiff] was meeting [the employer's] expectations." King v. Rumsfeld, 328 F.3d 145, 149 (4th Cir. 2003). Rather, "[i]t is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." Evans v. Techs. Apps. & Serv. Co., 80 F.3d 954, 960–61 (4th Cir. 1996) (internal quotation marks omitted). FedEx has shown that Lorenz was experiencing recurring difficulties completing her routes and was receiving disciplinary letters, in accordance with company policy, for her repeated failures to meet expectations. Each of Plaintiff's disciplinary letters was reviewed beforehand by Human Resources Representative Wilson, who Plaintiff has admitted did nothing discriminatory in nature. (Dkt. No. 41 at ¶¶ 33-36). Furthermore, each of the disciplinary letters survived the GFT review process, during which FedEx executives on the appeals board reviewed and upheld the disciplinary letters. (Dkt. No. 41 at ¶¶ 51, 60, 90). Thus, because Plaintiff has failed to show FedEx believed she was meeting expectations, Lorenz has failed to satisfy this required element.

Second, Lorenz cannot show that she was treated differently than employees outside the protected class. With regard to her first disciplinary letter, a male courier received a similar disciplinary letter when he had "no attempt" packages. (Dkt. No. 41 at ¶ 48). With regard to the third letter, for falsification of delivery times, FedEx presented evidence that three male couriers working under the same manager, Manager Kendrick, had received similar disciplinary letters from falsifying delivery records. (Dkt. No. 41 at ¶ 88). With regard to Plaintiff's ultimate termination, Plaintiff was terminated in accordance with clearly established FedEx policy for receiving three disciplinary letters within twelve months—a policy of which Plaintiff was aware.

13

## B. Wrongful Termination

The elements of wrongful termination are identical to those of sex discrimination, except for the fourth element. In a claim for wrongful termination the plaintiff must show that her position, after she was terminated, remained open or was filled by a similarly qualified applicant outside the protected class. Hill v. Lockheed Martin Logistics Mgmt., 354 F.3d 277, 285 (4th Cir. 2004) (en banc). With regard to the fourth required element, Plaintiff has not provided any evidence that her position remained open or was subsequently filled by a similarly qualified individual outside of the protected classes of which plaintiff was a member. FedEx has stated that Plaintiff's routes are currently being performed by another female employee, who is meeting expectations. (Dkt. No. 41 at 95). Thus, for this reason alone, Plaintiff's claim for wrongful termination cannot succeed. Hill, 354 F.3d at 285. Accordingly, FedEx is entitled to summary judgment on Lorenz's wrongful termination claim.

## C. Hostile Work Environment

To make a claim of a hostile work environment based on sex discrimination a plaintiff must show that the offending conduct: (1) was unwelcome; (2) based on gender; (3) "sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to create an abusive work environment;" and (4) that there is some basis for imputing liability to plaintiff's employer. Mosby–Grant v. City of Hagerstown, 630 F.3d 326, 334 (4th Cir. 2010) (quoting Conner v. Central Wholesalers, Inc., 573 F.3d 167, 175 (4th Cir. 2009)). In the present case, Plaintiff has failed to demonstrate the third and fourth elements of her claim.

First, Plaintiff has failed to show that the offending conduct was "sufficiently severe or pervasive to alter the conditions of plaintiff's employment and to create an abusive work environment." Mosby–Grant, 630 F.3d at 334. Even if accepted as true in their entirety,

14

Plaintiff's allegations of harassment do not meet Title VII's demanding standard for a hostile work environment. While the Court does not condone the alleged treatment of the Plaintiff, "there is a line between what can justifiably be called sexual harassment and what is merely crude behavior." Ziskie v. Mineta, 547 F.3d 220, 228 (4th Cir. 2008). Indeed, Title VII is not a "general civility code" because if that were the case "we would be litigating past sundown in ever so many circumstances." Id.

The Fourth Circuit has stated that to determine whether a reasonable person, id. (stating the perception of a hostile work environment "must be objectively reasonable to create a claim"), would find a work environment hostile, courts look "at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Singleton v. Dep't of Corr. Educ., 115 F. App'x 119, 122 (4th Cir. Nov. 17, 2004) (quoting Faragher v. Boca Raton, 524 U.S. 775, 787-88 (1998)). Here, the conduct alleged by Lorenz includes occasional comments on Lorenz's appearance or cat calls made in her general direction; occasional lewd gestures, some of which were not directed at Lorenz; male co-workers engaging in horseplay of a somewhat sexual nature; occasional instances of unwanted physical contact, including hugging and being pressed up against by a male co-worker on more than one occasion, and a co-worker leaving "void" containers in the FedEx truck. (Dkt. No. 46 at ¶ 16). These occasional incidents spread over a period of several months are not sufficient to create a work place that is "permeated with discriminatory intimidation, ridicule and insult," Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotations and citations omitted), rather they are examples of "crude behavior," "boorishness,"

15

and the "occasional off-color joke or comment" that the Fourth Circuit has found insufficient to give rise to a Title VII claim of a hostile work environment, Ziskie, 547 F.3d at 228.

Second, Plaintiff has failed to show that the alleged harassment can be attributed to FedEx. Plaintiff has admitted that none of her managers ever subjected her to sexual harassment. (Dkt. No. 46 at ¶ 7). In the case of harassment by employees, as opposed to management, "employers are liable only for their own negligence in failing, after actual or constructive knowledge, to take prompt and adequate action to stop [the harassment]." Mikels v. City of Durham, 183 F.3d 323, 332 (4th Cir. 1999). Furthermore, where an employer's response to reported harassment is handled in accordance with the company's established policy and includes conducting an investigation and taking action to address the findings in a prompt manner, such conduct is "reasonably calculated to end the harassment and, therefore, reasonable as a matter of law." E.E.O.C. v. Xerxes Corp., 639 F.3d 658, 671 (4th Cir. 2011). This is true even if the harassment subsequently reoccurs. Id. Finally, the Fourth Circuit has noted that "[d]istribution of an anti-harassment policy provides compelling proof that the [employer] exercised reasonable care in preventing and promptly correcting harassment. The only way to rebut this proof is to show that the employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 266 (4th Cir. 2001) (internal quotations and citations omitted).

Plaintiff has failed to refute FedEx's evidence that its investigation of Plaintiff's sexual harassment allegations was prompt and sufficient as a matter of law. In fact, the only aspect of the process that Plaintiff specifically challenges is whether FedEx fully investigated her claim because, as Plaintiff alleges, FedEx did not interview all witnesses to alleged incidents of sexual

16

harassment, but rather only interviewed those individuals FedEx believed would give answers favorable to management. (Dkt. No. 46 at ¶¶ 9, 17). However, Plaintiff's evidence that FedEx failed to fully investigate her claims is insufficient to create a genuine issue of disputed material fact. Plaintiff first argues, based on the deposition of Moncie Smith ("Smith"), another FedEx employee, who allegedly witnessed McClain's actions at the stretch and flex meeting, that FedEx did not interview all the witnesses to the incident. (Dkt. No. 26 at ¶ 17). Smith's deposition contains statements told to him by other FedEx employees who were also not interviewed by FedEx. However, Smith's statements, other than his own statement that he was not interviewed by FedEx, are nothing more than inadmissible hearsay. Inadmissible hearsay is insufficient to create a genuine issue of material fact. See Fed. R. Civ. P. 56(c)(2) ("[a] party may object that the material cited to … dispute a fact cannot be presented in a form that would be admissible in evidence." Considering the admissible evidence, Plaintiff has only shown that FedEx failed to interview one alleged witness to one incident and failed to interview the alleged harasser about one incident because he was on medical leave. That evidence is insufficient to create a genuine issue of material fact, because FedEx's investigation of alleged sexual harassment is not required to be perfect, it need only be reasonable and prompt. Xerxes Corp., 639 F.3d at 674 ("Plaintiffs often feel that their employer could have done more to remedy the adverse effects of the employee's conduct. But Title VII requires only that the employer take steps reasonably likely to stop the harassment."). Here, each of FedEx's investigations produced detailed reports. (Dkt. No. 41 at ¶ 19). Furthermore, as part of the 2009 investigation two witnesses to some of the most serious of the alleged sexual harassment conduct denied witnessing the conduct and FedEx's interview of six additional female employees yielded no further concerns regarding inappropriate sexual behavior. (Dkt. No. 41 at ¶¶ 21-24). The fact that Plaintiff disputes that the

17

harassment ended or that there may have been a few additional incidents of alleged sexual harassment, (Dkt. No. 46 at ¶ 16), does not create a genuine issue of material fact as to the reasonableness of FedEx's investigation. Xerxes Corp., 639 F.3d at 675 (holding that employers "cannot be held to a standard under which they are liable for any and all inappropriate conduct of their employees") (quoting Spicer v. Dept. of Corrs., 66 F.3d 705, 711 (4th Cir. 1995)).

Thus, the undisputed facts establish that FedEx has a robust anti-harassment and anti-discrimination policy in force that was applied to Lorenz's complaints of alleged sexual harassment. A prompt and reasonable investigation took place that generated a detailed report. Furthermore, as a result of the investigation, the complained of conduct stopped entirely or stopped for a measurable period of time after the investigation. Plaintiff has presented no admissible evidence to dispute these facts, and thus, Plaintiff's claim of a hostile work environment as the result of sex discrimination fails.

### D. Retaliation

Title VII's anti-retaliation provision forbids an employer from discriminating against an employee "because he [or she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). A plaintiff makes a prima facie case for retaliation by showing (1) that he or she engaged in a protected activity; (2) his or her employer acted adversely against her; and (3) the protected activity was causally connected to the adverse action. Holland v. Washington Homes, Inc., 487 F.3d 208 (4th Cir. 2007). Assuming arguendo that the plaintiff can present a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 285 (4th Cir. 2004). "This burden, however, is a burden of production, not persuasion." Washington

18

Homes, Inc., 487 F.3d at 214. Once the employer has shown this, "the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's stated reasons 'were not its true reasons, but were a pretext.'" Hill, 354 F.3d at 285 (quoting Reeves v. Sanderson Plumbing Prods. Inc., 530 U.S. at 143).

First, Plaintiff has failed to make a prima facie case because Plaintiff cannot show a causal connection between the protected activity and the adverse action. In this case, Lorenz must prove that her September 2009 letter to management and subsequent Internal EEO complaints alleging sexual harassment, among other things, were the cause of the disciplinary letters she received during the following 11 months and her eventual August 2010 termination. Plaintiff has not presented any direct proof of retaliatory intent, and thus, relies on indirect proof. Although the Fourth Circuit has not addressed what types of indirect evidence may be considered, the Third Circuit has stated that indirect proof of a causal connection "may include temporal proximity between the two events, an intervening pattern of retaliatory conduct, inconsistent reasons by the employer for the adverse action, and differential treatment of other employees." Jaudon v. Elder Health, Inc., 125 F. Supp.2d 153, 165 (D. Md. 2000) (citing Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279-81 (3d Cir. 2000)).

Regarding temporal proximity, the Fourth Circuit has ruled that when "at least three to four months separated the termination … and the claimed protected activities" the time period was too long to establish a causal connection on the basis of temporal proximity alone. Pascual v. Lowe's Home Ctrs., Inc., 193 Fed. App'x 229, 233 (4th Cir. 2006). Plaintiff argues that temporal proximity is satisfied because (1) seven days after giving an account of what happened at a meeting to Owens, she received a Performance Reminder; (2) several weeks after receiving the March 1, 2010, letter from Center regarding the results of FedEx's investigation of her claims

19

she received a Documented Counseling Performance Reminder; (3) she was given the July 2010 Performance Reminder weeks after filing her second EEOC complaint; and (4) Plaintiff was terminated after filing her first lawsuit against FedEx. (Dkt. No. 46 at 32-33).

With regard to her first allegation, Plaintiff does not state the contents of the letter or provide a record citation for the Court to review to determine the contents. Thus, the Court cannot conclude the letter constituted protected activity. Plaintiff's second allegation similarly fails because receipt of Robert Center's letter concluding that the investigation revealed an instance where a FedEx policy was violated, specifically that a female manager had solicited for the sale of her daughter's girl scout cookies in violation of FedEx policy, is not an example of a protected activity. Although there is a temporal nexus with regard to Plaintiff's third allegation, the discipline was upheld in the GFT review process and there is no evidence that the timing was anything other than a direct result of when Plaintiff committed the violations of FedEx policy. Finally, while Plaintiff accurately states she was terminated after filing a lawsuit against FedEx, she neglects to mention the lawsuit was filed eleven months earlier. Plaintiff also neglects to mention that more than four months elapsed between Plaintiff's allegation of sexual harassment and the first of the three disciplinary letters that resulted in her eventual termination. Accordingly, Plaintiff has failed to show temporal proximity.

Furthermore, Plaintiff has presented no evidence of inconsistent reasons by FedEx for her termination. The rationales for the disciplinary actions and Plaintiff's ultimate termination are set forth in writing and were provided to Plaintiff. FedEx never varied from these explanations and they were confirmed by FedEx Headquarters when the disciplinary actions were reviewed as part of the GFT process.

Having failed to show temporal proximity or inconsistency on the part of FedEx in its reason for terminating her, Plaintiff attempts to prove causation by alleging a pattern of retaliatory conduct and differential treatment of other employees. These arguments, however, are unsuccessful. Plaintiff's argument that the discipline she received in the form of Performance Reminders and Warning Letters was in retaliation for protected activities is undercut by the fact that each of her Performance Reminders and Warning Letters, as well as her ultimate termination, was reviewed through the GFT process and found to be appropriate. In order to accept Plaintiff's argument that her Performance Reminders and Warning Letters were retaliatory in nature, the Court would have to accept that the entire hierarchy at FedEx, including FedEx Headquarters, was retaliating against her—something of which Plaintiff has presented no evidence and the Court finds incredible.

Regarding Plaintiff's attempt to show FedEx treated her differently than other male employees, the evidence produced by FedEx shows that Plaintiff was held to the same performance standards as all FedEx employees. She received disciplinary letters when she violated FedEx policies, and had she not received discipline under these circumstances, she would have received preferential treatment. (Dkt. No. 41, at ¶ 35). Further, Plaintiff has failed to offer admissible evidence to prove her allegations that other male employees engaged in similar activities for which Plaintiff was disciplined, but were not disciplined.

Second, even assuming arguendo Plaintiff had proven a prima facie case, FedEx has articulated a non-retaliatory reason for Plaintiff's discipline and termination. Laughlin v. Metro Wash. Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). In the present case, Plaintiff has admitted she was aware that employees receiving three disciplinary letters within twelve months would face termination in accordance with company policy. Each of the times Plaintiff received

21

a disciplinary letter she had violated a FedEx policy. The January 2010 letter was sent after Plaintiff had five packages that she never even attempted to deliver at the end of her route. (Dkt. No. 41 at ¶¶ 38-43). The July 2010 disciplinary letter was issued after several instances of performance that did not meet expectations and culminated in an excessive number of late deliveries. When asked about the late deliveries Plaintiff admitted that she had ignored the delivery priority classification of the packages in violation of FedEx policy. (Dkt. No. 41 at ¶¶ 56-60). Plaintiff's third disciplinary letter was received after she falsified electronic delivery records. (Dkt. No. 41 at ¶ 61). Although Plaintiff contests that her actions constituted falsification, Plaintiff admits that she recorded a delivery attempt for G.E. when she was on a street nearby G.E. and not at the actual G.E. facility. Later that same day, Plaintiff recorded a delivery at the G.E. facility before 2:59pm, despite the fact that she did not sign in at the guard house until 3:05pm.[5] Thus, for each of the disciplinary letters and Plaintiff's ultimate termination FedEx has articulated a legitimate, non-retaliatory basis for the action—specifically that Lorenz violated established company policy.

Finally, Plaintiff has failed to demonstrate that FedEx's articulated reason was pretextual. Once the employer states a legitimate, non-retaliatory reason for the adverse employment action the burden shifts back to the employee to prove that the non-retaliatory reason is nothing more than a pretext for discrimination. Laughlin, 149 F.3d at 258. In the present case, Plaintiff has admitted to the underlying conduct that led to the disciplinary letters. Plaintiff's efforts to contest the disciplinary letters, based on her own perception that others were not disciplined for similar conduct, or that she was performing as well as other employees who were not disciplined

_____

[5] The delivery location is located inside the G.E. facility requiring the FedEx courier to sign in at the guard house before reaching the delivery location.

22

is not sufficient to create a genuine issue of material fact.  <u>Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 444 (4th Cir. 1998) ("It is the perception of the decision maker which is relevant to the question of retaliation, not the opinions of the [employee's] co-workers or third parties.")  Thus, Plaintiff has failed to establish pretext.

## IV.  Conclusion

The Court finds that Lorenz has failed to offer sufficient evidence from which a reasonable jury could find either unlawful discrimination, retaliation, wrongful termination, or the existence of a hostile work environment.  Accordingly, it is hereby **ORDERED** that Defendant's Motion for Summary Judgment, is **GRANTED** in its entirety.  The Clerk of Court is directed to send a copy of this Memorandum Opinion and accompanying Final Order to all counsel of record.

**ENTER**: This _17th_ day of August, 2012.

_____
Senior United States District Judge

23